CARL MENKE, appellant, v. FRANK PETERSCHMIDT, appellee.

FRANK PETERSCHMIDT, cross-appellee, v. CARL MENKE et ux., cross-appellants.

No. 48667.

(Reported in 69 N.W.2d 65)

MARCH 8, 1955.

Wilbur R. Dull, of Ottumwa, Joseph L. Phelan and Pollard, Palmer & Lawse, all of Fort Madison, for appellants.

Napier & Fehseke, of Fort Madison, and William R. Sheridan, of Keokuk, for appellee.

THOMPSON, J.—On January 11, 1952, about 4:30 p.m., a collision occurred at an intersection of two highways in Lee

County between an automobile owned by Carl Menke, driven with his consent by his wife, Coletta Menke, and a pickup truck owned and driven at the time by Frank Peterschmidt. Each of the roads was surfaced with gravel or loose rock, and there were no stop or slow signs on either at the intersection in question. It was still daylight. The Menke car was proceeding south on a north-and-south road, and the Peterschmidt truck was traveling west on the east-and-west road. Carl Menke commenced his action to recover claimed damage to his car; Peterschmidt cross-petitioned, bringing in Coletta Menke as an additional cross-petition-defendant, alleging damage to his truck and asking a considerable amount for personal injuries sustained in the collision. In Count I of his cross-petition, the appellee (Peterschmidt) alleged certain specific negligences of the driver of the Menke car; Count II was based upon the doctrine of the last clear chance. The trial court submitted the issues raised by the appellant's petition, but on the appellee's cross-petition submitted only the last-clear-chance question raised by Count II. The jury returned its verdict for the appellee (cross-petitioner) against both appellants (the Menkes) in the sum of $17,068.65.

I. The appellants assign three errors: A, that the appellee was guilty of contributory negligence which continued to the time of the collision; B, the theory of last clear chance was not applicable to the facts in the case, and Coletta Menke had no reasonable opportunity or clear chance to avoid the accident; and C, the court was in error in admitting evidence concerning insurance coverage, to the prejudice of appellants.

In the view we take of the case, it will be necessary to discuss and determine only Assigned Error B. This concerns the question whether the driver of appellants' car, Coletta Menke, did in fact have a clear chance to avoid the accident and the resulting injuries to appellee after he had placed himself in a position of peril. The doctrine of the last clear chance has been considered by this court in many cases, and the proper rules to be followed often discussed. The underlying theory upon which the doctrine rests is in some confusion. We have said at times it is an exception to the rule barring recovery to one who has been guilty of contributory negligence, Gearhart v. Des Moines

Railway Co., 237 Iowa 213, 21 N.W.2d 569; Lynch v. Des Moines Railway Co., 215 Iowa 1119, 245 N.W. 219; Bruggeman v. Illinois Central Railroad Co., 147 Iowa 187, 123 N.W. 1007, Ann. Cas. 1912B 876. More often we have held to the causation theory as the real support for the rule, as put thus in Winegardner v. Manny, 237 Iowa 412, 413, 21 N.W.2d 209: "The doctrine refers to negligence after negligence. It is a phase of the doctrine of proximate cause. The theory is that the later negligence becomes the proximate cause." See also Groves v. Webster City, 222 Iowa 849, 270 N.W. 329. This latter theory has been criticized by some writers as troublesome where the negligence of the plaintiff continues up to the time of the accident, and so may be said to be as much a cause as the failure of the defendant to act after discovering plaintiff in a position of peril. The appellants here contend that the negligence of the appellee did so continue up to the instant of collision, and so the doctrine of last clear chance does not apply. But under the facts before us we think we need not determine the question. It is of interest only academically in this case.

■ II. It is the appellants' contention that the trial court should have sustained their motion for directed verdict on the cross-petition and later for judgment notwithstanding verdict. No complaint is made in this court concerning any error in submitting Carl Menke's own claim for damages to his car. We are aware of the oft-cited rule that the facts must now be considered in the most favorable aspect to the appellee which they will reasonably permit. There is also the rule that last clear chance, like other negligences, must be pleaded and the burden is upon the pleader to prove the facts making it applicable by a preponderance of the evidence, Nagel v. Bretthauer, 230 Iowa 707, 712, 298 N.W. 852, 854; Steele v. Brada, 213 Iowa 708, 239 N.W. 538. An absence of evidence, a failure to show something from which it may be fairly found the defendant had the last clear chance to avoid the accident and its attendant injuries, will be fatal to plaintiff's case.

■■ III. It is well settled that the requisites to an application of the last-clear-chance doctrine are evidence that the defendant had (1) knowledge of plaintiff's presence; (2) real-

ization of plaintiff's peril; and (3) the ability to avoid the injury to plaintiff thereafter. The defendant must have known of plaintiff's presence and had the means and opportunity, by the exercise of reasonable care, to know of his peril and to avoid injuring him. It is actual knowledge of plaintiff's presence that is required, Miller & Kizer v. Des Moines City Railway Co., 196 Iowa 1033, 195 N.W. 600; Carr v. Inter-Urban Railway Co., 185 Iowa 872, 171 N.W. 167. But this knowledge may be inferred from circumstantial evidence, in spite of denial by the defendant, Gearhart v. Des Moines Railway Co., supra; Gregory v. Wabash Railroad Co., 126 Iowa 230, 101 N.W. 761. Our cases make it clear there must be actual knowledge of plaintiff's presence; but as to the second specification above there is confusion as to whether there is required actual realization of his peril or only that as a reasonably prudent person the defendant should have realized it. For the purpose of clarification of this issue, we now hold that it is not necessary to show actual knowledge of the danger, but only that it should have been realized in the exercise of reasonable care. We said in the recent case of Winegardner v. Manny, supra, page 415 of 237 Iowa, page 211 of 21 N.W.2d:

"In order for defendant to have had actual knowledge of plaintiff's peril it is not necessary that he actually knew an accident would be inevitable if defendant failed to exercise care. It is sufficient if peril was so imminent that to a person of ordinary prudence the infliction of injury would seem probable if proper effort were not made to avoid it."

In Orr v. Cedar Rapids & Marion City Railway Co., 94 Iowa 423, 427, 62 N.W. 851, 852, we approved an instruction which told the jury: " 'If * * * you find that the plaintiff was negligent, still the defendant cannot avoid liability if you find from the evidence that plaintiff, at the time in question, was in a perilous position, and that defendant's employe in charge of said car saw plaintiff, and knew the fact that he was in peril, *or might have so known by the use of ordinary care,* and thereafter failed to use ordinary care to stop said car and prevent injury to plaintiff; * * *'."

See also Roennau v. Whitson, 188 Iowa 138, 154, 175 N.W. 849, 855; King v. Chicago, Rock Island & Pacific Railway Co., 185 Iowa 1227, 1236, 172 N.W. 268, 273; 34 Iowa Law Review 480, 489. It is well settled that the test of the third requirement above set forth is ability to avoid the injury by the exercise of reasonable care.

In this connection, reference should be made to language in Bridenstine v. Iowa City Electric Railway Co., 181 Iowa 1124, 1131, 165 N.W. 435, 438, where this court said: "Even if it be conceded * * * that the motorman was unable to stop the car, this would not necessarily relieve the defendant of the charge of negligence if the failure of the motorman to control the car was due to the fact that he was handicapped in his effort by the result of his own carelessness in attaining such high rate of speed."

What this statement seems to mean is that the doctrine of the last clear chance applies even though some previous negligence of the defendant has made it impossible for him to avoid the accident after he discovers the plaintiff in his position of peril. Such is not the law. It is defendant's negligence after he discovers or in the exercise of reasonable care should have discovered the plaintiff's danger that brings the doctrine into effect. We held contra to the quoted statement in Steele v. Brada, supra, 213 Iowa 708, 713, 239 N.W. 538, 540. We now expressly disapprove the quoted language in Bridenstine v. Iowa City Electric Railway Co., supra.

IV. Keeping in mind that the burden was upon the appellee to make his case under the last-clear-chance theory under the foregoing rules, we turn to the evidence. There is here of considerable importance the Iowa directional right-of-way statute at intersections, section 321.319, Code of Iowa, 1950, which we set out:

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way.

"The foregoing rule is modified at through highways and otherwise as hereinafter stated in this chapter."

■ The Menke car was approaching the intersection on appellee's right, and so had the right of way under this statute. It is not an absolute right, but generally the statute has a purpose and meaning, and Mrs. Menke had a right to rely upon appellee respecting it and yielding the intersection to her if there was danger of a collision. Quite evidently he did not do so, and his reliance upon the last-clear-chance rule is an admission of negligence on his part; that is to say, the doctrine presupposes negligence on the part of the plaintiff. Wilson v. Illinois Central Railroad Co., 150 Iowa 33, 41, 129 N.W. 340, 344, 34 L. R. A., N. S., 687; Clemens v. Chicago, Rock Island & Pacific Railway Co., 163 Iowa 499, 144 N.W. 354; Lynch v. Des Moines Railway Co., supra.

Mrs. Menke's knowledge of appellee's presence and approach to the intersection is fully proven. She testified she saw him approaching from her left, when each vehicle was about 75 feet from the crossing of the roads. The questions of her realization of his peril and her opportunity to avoid the collision after she realized it are much more difficult. The important problem for determination here is whether she saw the appellee in a position of peril—a position from which she should as a prudent person have realized his danger—when she had sufficient time, by the exercise of reasonable care, to take such action as would have protected him from the collision and injuries which resulted.

■ Two considerations are of controlling importance here. We have pointed out that the burden was upon the appellee to make his case; in other words, to furnish substantial evidence, direct or circumstantial, which at least warranted submission to the jury of the problem posed. The second point is that the driver of appellants' car had the right to assume appellee would obey the law and the rules of the road, particularly the directional right-of-way statute. All drivers using the highways have the right to so assume concerning the actions of other vehicles or pedestrians. The rule is so well settled as to need no elaboration; but see Hogan v. Nesbit, 216 Iowa 75, 82, 246 N.W. 270, 273, Jelsma v. English, 210 Iowa 1065, 1068, 231 N.W. 304, 305,

306, and Stanoshek v. Chicago, Rock Island & Pacific Railroad Co., 198 Iowa 62, 67, 199 N.W. 310, 312.

 With these principles in mind, we have examined the record. We find no evidence therein, either direct or circumstantial, which engenders a jury question upon the issue of the last clear chance. The appellee's own testimony furnishes no support for a last-clear-chance finding. He says he at no time saw the Menke car. He places his speed as he approached the intersection at about 20 miles per hour and says he does not remember whether he slowed as he reached the crossroad, but assumes he did because that was his custom. The last he remembers he was west of the mailboxes on the shoulder at the west edge of the traveled part of the intersection. He had looked to his right at a point where he could see about 185 feet to the north, and apparently did not see the Menke car. The exact width of the intersection between the fence lines is not given, but there is some intimation the traveled portion of the highways was each about 24 feet.

Mrs. Menke testified she first saw the appellee's truck when it was about 75 feet east of the intersection, and her own car was about the same distance north. She fixes the speed of the appellee's vehicle about as he does, at 20 miles per hour, and of her own car at that time at about 40. She says she took her foot off the accelerator when she observed the approaching truck. The appellee devotes much time to his argument that Mrs. Menke's testimony is inconsistent and in many respects not credible. Without endorsing this contention, we think it immaterial in any event. Since she was the only witness who was present and who testified to what actually happened, if her testimony is not to be accepted, there is nothing substantial to show what she saw and what she did, or from which a last-clear-chance situation may be inferred. There are no presumptions of appellant's negligence to aid appellee. He must recover upon the strength of his own case; a merely negative showing will not avail him.

Mrs. Menke said that as soon as it became evident appellee did not intend to stop she applied her brakes and turned to the right in an attempt to avoid a collision. There is no evidence in

the record showing how many feet would be required to bring either vehicle to a halt at their respective speeds. Mrs. Menke says she slowed down considerably after she first saw Peterschmidt and before she entered the intersection, but we have no estimate of her speed at any point other than when she first saw the appellee's truck some 75 feet from the crossing when she was about the same distance away. Nor are we given any evidence from which a fair deduction may be made as to when Mrs. Menke should have decided appellee did not intend to yield the right of way; that is, when she first should have realized he had placed himself in a position of peril. This is a matter essential to appellee's case. Of course, if there is circumstantial evidence from which it may fairly be deduced Mrs. Menke should have seen appellee in a position of peril in time to avoid the collision by the exercise of reasonable care, the courts are not bound by her disavowal of knowledge in time to forestall the danger. But we find no such evidence here. Direct evidence is totally lacking, and there are no circumstances which aid the appellee.

It is the evident thought of appellee's counsel that the time and place at which Mrs. Menke first discovered the presence of the Peterschmidt truck are likewise the time and place which fix the beginning of her presumed knowledge of potential danger. A good deal of time was used on the trial and considerable space is taken up in the printed arguments concerning whether she saw or could have seen appellee approaching from a greater distance than she admitted. The matter is not material. Whether she saw him at 75 feet, 150 feet or 600 feet, she was not bound to apprehend at any of those distances that he would not stop, or at least take some steps to yield the right of way in accordance with law. Language in Williams v. Mason City & Fort Dodge Railway Co., 205 Iowa 446, 453, 214 N.W. 692, 694, 695, is appropriate to this situation. We quote: "Appellee suggests that said trainman saw the approaching automobile 100 to 150 feet south of the crossing. * * * That, however, does not overcome the difficulty. Travelers in motor vehicles frequently and customarily drive toward an oncoming train and stop just before going upon the tracks, in order to permit the train to proceed on

its way. There is in such conduct, however, no 'peril', until such wayfarer fails to stop in a zone of safety. Those in charge of the train have a right to assume that he will not drive into danger."

So highway drivers having the directional right of way have a right to assume those approaching from the left will not "drive into danger."

A vehicle driven at 20 miles per hour will travel slightly less than 30 feet per second. Thus, within two seconds, the truck would have passed from a point approximately 36 feet east of the traveled portion of the intersection entirely across it, assuming a width of 24 feet for the traveled part as the record indicates. We have no guide to the exact distance required for appellee to stop his truck. So, although we may think the point at which Mrs. Menke should have realized his peril was that point east of the intersection at which he should have applied his brakes so that he could stop before entering it and so risk a collision, we do not know where that point may have been. There is nothing to show he could not have stopped in considerably less than 75 feet. Any determination that Mrs. Menke should have seen the appellee's peril in time to avoid the danger by the exercise of reasonable care must rest upon pure speculation. She must have realized it—regardless of previous negligence on her part, if any—in time to act. The appellee failed to carry the required burden of showing she did so.

Appellee points out in argument that Mrs. Menke testified she did not see the Peterschmidt vehicle when she looked east at the time she had a view in that direction for 150 feet. She then answered in the affirmative a cross-examiner's question, "He might have been almost into the intersection at the time you looked to the east from 150 feet and you didn't see him, is that correct?" From this it is contended appellee may have been about to enter the intersection when appellant's car was 150 feet away, and so there was a last clear chance for Mrs. Menke to avoid the collision. But the record makes it clear Mrs. Menke at all times contended she did not see appellee until both vehicles were within about 75 feet of the intersection, from which point on she did see the truck at all times.

Many Iowa cases have dealt with the last-clear-chance doctrine, occasionally denominated the last "fair" chance or the doctrine of "discovered peril." The facts are various and have led to different rulings. They might be cited at length without doing more than to demonstrate each case must depend upon its own facts. The time element is of greatest importance. Perhaps the closest case in point of the facts involved is Hogan v. Nesbit, supra. There the plaintiff approached an arterial highway guarded by a stop sign, failed to stop and was struck by the defendant traveling on the arterial way. It appeared the defendant did not realize plaintiff did not intend to stop until the latter had approached within seven or eight feet of the highway on which the defendant was traveling and when defendant was within perhaps five feet of the place of collision. It was held there was no last clear chance for the defendant to avoid the accident.

The appellee cites and urges upon us Russell v. Leschensky, 224 Iowa 334, 276 N.W. 608. The case illustrates the difference made by varying factual situations. There was substantial evidence the plaintiff's truck came through a stop sign and upon the pavement on which the defendant's beer truck was traveling "well beyond" a point more than 230 feet distant. In Pettijohn v. Weede, 219 Iowa 465, 258 N.W. 72, there was evidence from which it could be found the defendant saw the plaintiff, a pedestrian, crossing the street some 45 feet in front of him, in his direct line of travel, and that he could have stopped his car within 19½ feet. We have examined other authorities cited and relied upon by the appellee, and do not find them factually in point.

We have pointed out the lack of any showing that Mrs. Menke, in the exercise of reasonable care, should have realized the appellee's position of peril at a time when she could, as a prudent person, have avoided the collision. In fact, it appears affirmatively that she could not have had as much as two seconds after it became apparent appellee was ignoring, or intended to ignore, the directional right-of-way-at-intersections statute. She did not have a "clear" chance to stop, or to dodge. She did not have "time to be negligent." Mast v. Illinois Central Rail-

road Co., 79 F. Supp. 149, 160. We have recently held that negligence should not ordinarily be predicated on an emergency confronting a driver who has only three seconds to make a decision. Koob v. Schmolt, 241 Iowa 1294, 1298, 1299, 45 N.W.2d 216, 218. We there quoted with approval from Rollison v. Wabash Railroad Co., 252 Mo. 525, 541, 160 S.W. 994, 999: " 'To predicate negligence on two seconds of time is in and of itself a monumental refinement.' " This case has been cited and approved in Goodson v. Schwandt, 318 Mo. 666, 669, 300 S.W. 795, 796, and Hamilton v. Finch, 166 Ore. 156, 166, 109 P.2d 852, 855, and 111 P.2d 81. We said in Ryan v. Trenkle, 199 Iowa 636, 643, 200 N.W. 318, 321: "To split a second of time by the mere estimate of witnesses, and to use such estimate as a basis for a cause of action, is a speculation too refined and too uncertain to warrant its adoption as a precedent." See also Steele v. Brada, supra, 213 Iowa 708, 712, 239 N.W. 538, 540; Albrecht v. Berry, 202 Iowa 250, 254, 255, 208 N.W. 205, 206, 207; Nagel v. Bretthauer, supra, 230 Iowa 707, 712, 298 N.W. 852, 854.

Something better than an opportunity for the jury to guess must be furnished by the litigant who assumes the burden of proving the applicability of the doctrine of the last clear chance. If the record here shows anything affirmative, it is that Mrs. Menke had no real time or opportunity—no "clear chance"—to avoid the collision within the meaning of the rule.

V. Some contention is made that when Mrs. Menke swung her car to the right in an effort to avoid the collision after she had discovered it was imminent, she followed appellee's vehicle entirely out of the intersection and actually struck it at a point on the east-and-west road a short distance west of the intersection. The appellee pleaded that his truck had almost completely traversed said intersection. His evidence shows the collision occurred west of the traveled portion of the north-and-south roadway, about opposite the ditch along the west side. We think the point not material in that it fails to aid appellee in supporting the theory of the last clear chance, the only part of his case which the trial court submitted to the jury. He asserts this court has incorporated the "pursuit" theory into the doctrine of last clear chance, by its holding in Pettijohn v.

Weede, supra, 219 Iowa 465, 258 N.W. 72. We have already pointed out there was substantial evidence to support a finding of last clear chance in that case. In the case at bar, Mrs. Menke had a most limited opportunity to act. Perhaps it would have been better if she had turned left instead of right; but one who acts in an emergency is not to be held to the same accurate judgment as he would be in circumstances giving him time for deliberation. In any event, the matter has no material bearing upon the question of the last clear chance, under the circumstances shown here. There is no evidence to contradict Mrs. Menke's testimony she was acting in an emergency not of her own making and doing the best she could to extricate herself and the appellee from the danger in which they found themselves. If she turned right when she might have been better advised to turn left, it merely points up the suddenness of the emergency and the lack of opportunity for any deliberation.

VI. Appellants also predicate error upon the introduction of the element of liability insurance into the case by the appellee. In view of the holding in Division IV hereof and since the same situation is not likely to recur upon another trial, we find it unnecessary to decide this point.—Reversed and remanded.

WENNERSTRUM, C. J., and BLISS, GARFIELD, HAYS, LARSON, MULRONEY, and SMITH, JJ., concur.